IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DEBORAH LYNN GETCHMAN,    )
individually and on behalf of others    )
similarly situated,    )
    )
    Plaintiff,    )
    )
v.    )    Case No. 4:16-cv-01208-CDP
    )
PYRAMID CONSULTING, INC.,    )
    )
    Defendant.    )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

COMES NOW Plaintiff Deborah Getchman ("Plaintiff" or "Getchman"), by and through undersigned counsel, and for her Response in Opposition to Defendant's Motion To Dismiss For Lack of Subject Matter Jurisdiction, states as follows:

**FACTUAL BACKGROUND**

*A. Plaintiff's Work For Pyramid*

Plaintiff has been continuously employed as a Consultant by Defendant Pyramid Consulting, Inc. ("Defendant" or "Pyramid") since her hire on or around June 24, 2014. [ECF No. 3, ¶¶ 5, 7; ECF No. 14, ¶¶ 5, 7]. Pyramid Consulting Inc. is a Georgia corporation based in Alpharetta, Georgia. [ECF No. 3, ¶ 14, ¶4]. Pyramid works with large enterprises and fast growing small- or medium-sized businesses to provide Information Technology Staffing and Enterprise Solutions. [ECF No. 3, ¶ 4]. Plaintiff's work duties include scheduling and achieving projects goals by coordinating between departments and teams at all stages of product testing and development. [ECF No. 3, ¶¶ 10-13; ECF No. 14, ¶¶ 10-13].

Defendant is an employer of Plaintiff under the FLSA. [ECF No. 14, ¶ 5, 7]. Defendant remotely manages Consultants (including Plaintiff), possesses the power to hire and fire Consultants, and supervises and controls their work schedules or conditions of employment, rates and methods of payment, and employment records. [ECF No. 3, ¶ 5].

### B.   Plaintiff's Pay Structure

Defendant paid Plaintiff $28.12 per hour during the first two weeks of her employment. (Ex. 1 - Correspondence Aug. 21, 2014).  This total amount was split $15 per hour and $13.12 per hour per diem. (*Id.*).  Starting August 18, 2014, Defendant paid Plaintiff a total of $32.00 per hour. (*Id.*).  Defendant expressly indicated this rate was to be split $17.00 per hour and $15 per hour per diem. (*Id.*).

Payments, deductions, and corrections to Plaintiff's compensation are reflected in her paystubs. (*See* Ex. 3 - Paystubs).  Plaintiff's paystubs for the period of July 7, 2014 through August 18, 2014 reflect that she was paid $15 per hour.  From August 18, 2014 through July 5, 2015, her paystubs reflect payment at $17 per hour. (*Id.* at pp. 1-25).  These pay stubs further include an "Adjustment."  This "Adjustment" amount represents pay for straight time hours worked at the "per diem" rate. (*See generally id.*)  "Adjustment" payments are not reflected in the taxable Earnings portion of the paystub. (*Id.*).

Plaintiff never submitted expense reports, as this "Adjustment" amount was never intended to reimburse expenses. (*Id.*; *see also* ECF No. 6-1, ¶¶ 5, 9).  The per diem hourly rate was only paid for hours worked up to 80 hours per bi-weekly pay period (*i.e.*, non-overtime hours).  For example, the paystubs reflect that—during the two-week pay period of July 21, 2014 through August 3, 2014—Plaintiff received an "Exp Reimbursed" adjustment of $1,049.60 (*i.e.*, $13.12 multiplied by 80 hours, not 94 hours (*i.e.*, the total hours worked)).  Defendant paid the 14 overtime

hours at a rate of $22.50 (*i.e.*, $15 x 1.5).  In other words, Defendant excluded per diem wages from Plaintiff's regular rate for purposes of calculating overtime wages owed to Plaintiff, and thus significantly underpaid Plaintiff on her overtime wages (*i.e.*, for her 14 hours of overtime, Defendant paid Plaintiff $22.50 ($15 x 1.5) per hour instead of $42.18 ($28.12 x 1.5) per hour). (Ex. 3, p. 5).  Had Defendant calculated Plaintiff's pay without the unlawful payment split (*i.e.*, exclusion of per diem pay of $13.12 per hour from the regular rate of $28.12 per hour), Plaintiff would have received $275.52 more in overtime wages on these 14 hours alone.

### C.  Yearly Compensation Totals

In total, Plaintiff's paystubs for the period of July 7, 2014 through July 5, 2015 reflect receipt of $34,989.00 for 2061 straight time hours worked, $30,193.08 in reimbursement adjustments, but only $13,543.50 in earnings for 534 overtime hours worked, for a total of $78,725.59. (Ex. 3, pp. 11, 25). The paystub records demonstrate Plaintiff received $11,846.71 less than what she was owed had her overtime pay been properly calculated (at $42.18 per hour and $48 per hour, respectively) based on the then-applicable regular rates of $28.12 per hour and $32 per hour for the relevant work weeks. (*See* Ex. 3; Ex. 4).

Plaintiff's Form W-2's and weekly paystubs are accessible from Defendant's ADP website. (Ex 8 - Correspondence July 11, 2014). The amounts contained in Plaintiff's paystubs and timekeeping records match those contained in her Form W-2's. (*Compare* Ex. 3 - Paystubs & Ex. 7 - Time Records *with* Ex. 4 - W-2s). The Form W-2'S reflect and confirm payment amounts received by Plaintiff.  (Ex. 4 - W-2s). For example, her Form W-2 for 2014 reflects $19,606.50 in taxable wages, tips, and other compensation (with $2,491.87 withheld in state and federal taxes) and her 2015 W-2 reflects $79,403.18 in taxable wages (with $14,910.16 withheld in taxes). These

numbers comport with those contained in Plaintiff's paystubs and time records. (Ex. 3 - Paystubs; Ex. 7 – Time Records).

### D.  Plaintiff's Communications With Pyramid Regarding Her Pay

Defendant's form employment contract stated Plaintiff was to be "paid for approved hours at the agreed rate" and that all deductions made from Plaintiff's compensation would be "as authorized by applicable law, including amounts attributable to all applicable income tax withholding." [ECF No. 6-1, ¶ 5].  Defendant does not pay for Plaintiff's "travel expenses, living expenses, entertainment expenses or any other costs." [ECF No. 6-1, p. 2]. The contract specifies that "in the event of a breach of this Agreement, the other party shall have such rights and remedies to which it is entitled at law or in equity." [ECF No. 6-1, ¶17].  Defendant's contracts and accompanying work orders reflect the regular pay rates discussed above (*i.e.*, $28.12 per hour, $32 per hour, and the related per diem splits). [ECF Nos. 6-2, 6-3, 6-4].  At the start of her employment, Plaintiff asked Defendant how it handled payment of per diem and whether an expense report was required. (Ex. 2 - Correspondence, July 18, 2014).  Defendant responded only: "Your per diem is automatically taken out of your paycheck." (*Id*.).

On July 13, 2015, Plaintiff communicated to Defendant via email regarding her concerns about the potential impermissibility of Defendant's per-diem pay structure under the FLSA.  [ECF No. 1-10].  This email contained a hyperlink to a blog on Defendant's counsel's website describing growing scrutiny by the United States Department of Labor ("DOL") of "per diem" payments, improperly excluded from calculation of the regular rate under 29 U.S.C. §207(e)(2) and 29 C.F.R §778.217. (Ex. 9 - Fisher Phillips LLP "FLSA Per-Diem Claims On The Rise" Blog).  The blog post also indicated related problems with tax treatment in resolving and calculating  per diem pay errors and pay schemes (both intentional and unintentional). (*Id*.)  From August 24, 2015 to

September 11, 2015, Plaintiff and Defendant corresponded on gross pay and post-tax net pay amounts regarding her unpaid overtime wages, including a spreadsheet prepared by Defendant. (Ex. 10 - Correspondence Sept 11, 2015).

The spreadsheet prepared by Defendant identifies $11,945.91 as "Total Payable amount as per new pay rate." (Ex. 11, Defendant's Excel Spreadsheet).   The spreadsheet vaguely notes $8,564.73 as "Less, benefit of taxes she has saved because of per diem $30493.88," but provides no indication this amount was ever paid to Plaintiff or the government as taxes or wages. (*Id*.). The spreadsheet further states $3381.18 as "Total Gross payable amount." (*Id*.).   The spreadsheet thereafter lists $672.27 as "less, all employee taxes on $3381.18" and concludes the "Net amount" is thus $2708.91. (*Id*.).   Defendants have not produced any documents indicating retroactive payment of wages (and taxes thereon) was properly calculated or performed.

On or around September 14, 2015, Plaintiff received and deposited a check from Pyramid Consulting, Inc. for $2,708.91 with memo reading only "OT hrs arrear." [ECF No. 21]. Additionally, on September 14, 2015, Plaintiff corresponded with Defendant regarding her confusion regarding the $8,564.73 (*i.e.*, the purportedly "saved" taxes amount offset from the overtime wages owed to Plaintiff), indicating:

> I've looked over your numbers and even in the spreadsheet I cannot tell where they come up with the $8,000 + amount that it would have cost me in taxes So I don't think that we're anywhere near on the same page as far as what the final payout should be…

Plaintiff indicated her confusion stemmed these vague amounts and the absence of any indication of gross pay or any amounts of any tax deductions actually applied to her unpaid wages.  No other documents accompanied the check or explained these amounts. (Ex. 12 - Correspondence Jan. 22, 2016, p. 4).  Moreover, these amounts purportedly "saved" or "payable" to Plaintiff are not reflected in her paystubs or her Form W-2's for 2014 or 2015. (Ex. 3; Ex. 4 W-2s).  Plaintiff also

5

did not receive a Form 1099 for 2015, a Form W-2, or a Form W-2c for any of these sums. [ECF No. 1, ¶¶ 37, 38].

Plaintiff's paystubs reflect: (1) her actual pay rate of $32 per hour; (2) no reimbursement adjustments; (3) no retroactive pay increases; (4) no lump sum payments in any amount; and (5) no record of taxes withheld in the amounts of $8,564.73 or $672.27 for retroactive payment. (*See* Ex. 3). The ADP Payment Register further does not reflect any payments beyond those contained in the paystubs. (*Id*. at pp. 1-3). Plaintiff's Form W-2 for 2015 and subsequent pay stubs do not reflect retroactive pay increases, lump sum payments in any amount; nor taxes withheld from any such amount. (Ex. 4).

Plaintiff continued to correspond with Defendant by email and phone from September 2015 through January 22, 2016, demanding explanation as to these phantom "tax deductions." (Ex. 12 - Correspondence Jan. 22, 2016). Plaintiff explicitly stated: "I don't think it is fair for me to be the only one compromising" and that there is "no option to get any of that money back in the form of a tax return." (*Id*.). Defendant replied, on January 22, 2016: "Our payroll department have confirmed that they have re-run your earnings and overtime, and everything owed has been paid to you." (*Id*.). Defendant again attached an Excel Spreadsheet. (Ex. 11 - Spreadsheet). This spreadsheet was identical to previous spreadsheets provided by Pyramid. (*Id*.). There is no evidence that any of the amounts identified as taxes or wages owed in the spreadsheet were ever paid as taxes or wages (or retroactive pay increases); rather, these amounts were vaguely labeled instead as "saved" or "payable" for "less" the amounts purportedly "saved." (*Id*.).

Plaintiff's ADP payroll records reflect some corrections made to her pay. (Ex. 3, pp.41-42). For example, on January 13, 2016, a double entry of Plaintiff's overtime pay occurred, paying her $1,056.00 twice. (*Id*.). On January 27, 2016, this amount was corrected with a separate,

deduction entry of $1,056. (*Id.*).  These ADP corrections were reflected in both the yearly total and the Form W-2 totals in Plaintiff's records. (*See* Ex. 3 – Paystubs; Ex. 4 - W-2's).  The only other record of correction occurred on August 27, 2015, when Plaintiff indicated that an expense report for $411.59 was inadvertently paid twice. (Ex. 5 - Correspondence Aug. 27, 2015).  And the payroll record for September 23, 2015 reflects a correction of this in the amount of a deduction for $411.59. (Ex. 3, pp. 32-33).  Both entries show that the taxable wages portion for "this period" matches the gross pay amount. (*Id.*).

The above described entries are the only corrections to unpaid or overpaid overtime or any other error in the amount of the payment. (*See* Ex. 3 - Paystubs).  Plaintiff's ADP records do not reflect any correction of per diem payments paid to Plaintiff.  (Ex. 6 - Correspondence Sept. 24, 2014).  Plaintiff also indicated to Defendant that her reimbursement rates were not correctly matching her per diem rates on Earning Statements for Sept. 10, 2014 and Sept 24, 2014 (*i.e.*, Earning Statements for "Pay Dates" of Sept. 10, 2014 and Sept. 24, 2014). (Ex. 5, pp. 3-7).  Defendant promised to fix them. (*Id.*).  However, correction of these per diem amounts do not appear in the payroll register, Plaintiff's payroll records, or Plaintiff's Form W-2's. (*See* Ex. 3, pp. 6-8; *see generally* Ex. 4 - W-2's).

### E.  Allegations of the Complaint

On July 22, 2016, Plaintiff filed her Verified Complaint and moved for conditional certification of a class of similarly situated employees of Defendant. [ECF Nos. 1-6]. Plaintiff alleged, *inter alia*:

> (1)   Defendant failed to pay Plaintiff and those similarly situated overtime compensation at the statutorily prescribed rate of one-and-one-half times the regular rate of pay for all hours worked in excess of forty (40) per work week;

(2)     Defendant violated the FLSA by failing to keep accurate records of all wages paid and adjustments to those wages, including bonuses, deductions, and other facilities worked by Plaintiff and those similarly situated;

(3)     By way of a confidentiality clause in its form contracts and form work orders, Defendant actively sought, and continues to seek, to conceal its consultant pay structure from any outside employee, including Defendant's clients and employees;

(4)     Defendant has not lawfully rectified the systematic underpayment of its employees who were paid in a similar fashion pursuant to similar form contracts and similar recordkeeping plans and practices;

(5)     Defendant requested Plaintiff accept a substantially reduced, inaccurate amount in unpaid compensation to address her complaints and for Pyramid to avoid having to re-file their quarterly filings with third party payroll provider ADP; [and]

(6)     To date, Plaintiff has not received the full compensation to which she is entitled under applicable laws and regulations.

[ECF No. 1, at ¶¶ 50-51, 27, 37, 34, 38].  Plaintiff sought to bring her case on behalf of herself and requested this Court Order, individually and collectively, as follows:

(1) judgment against Defendant for violation of the overtime wage provisions of the FLSA; (2) an award of unpaid overtime wages; (3) determination that Defendant's FLSA violations were willful; (4) imposition of liquidated damages against Defendant; (5) pre-judgment and post-judgment interest as provided by law; (6) an award of reasonable attorneys' fees and litigation and court costs incurred; and (7) such other and further relief as the Court deems fair and equitable under the circumstances.

[ECF No. 3, p. 10].  Plaintiff filed a signed FLSA collective action consent form with her Complaint. [ECF No. 1-11].

### F.  Defendant's Litigation Stance

Defendant filed an Answer on September 19, 2016. [ECF No. 14]. Defendant specifically admitted, *inter alia*:

(1)     Plaintiff purports to state a claim pursuant to the Fair Labor Standards Act ("FLSA"), and that jurisdiction is proper pursuant to 28 U.S.C. §1331;

(2)     Defendant is an Employer within the meaning of the FLSA;

(3)    Plaintiff was hired on June 23, 2014 and is still employed by Defendant;

(4)    Certain terms of Plaintiff's employment were specified in a consultant Agreement, and that Exhibit A is a copy of that Agreement; [and]

(5)    Under the terms of the uniform employment contract and work order attachments, Plaintiff's primary duties were to perform work for Defendant and Defendant's specified client.

[ECF No. 14, ¶¶ 1, 5, 7, 8, 10].  Defendant's Affirmative Defenses include claims that:

(1)    Plaintiff has been properly paid all wages owed by Defendant under all applicable laws;

(2)    Plaintiff is not entitled to liquidated damages;

(3)    Plaintiff's claims are not appropriate for collective action treatment under 29 U.S.C. §216(b).

[ECF No. 14, Aff. Def. ¶¶ 1, 5, 17].

Plaintiff rejected all of Defendant's settlement offers since the filing of the lawsuit. (Ex. 13; Ex. 14; Ex. 15).  On September 14, 2016, Plaintiff's counsel indicated the spreadsheets provided by Defendant were reviewed and Plaintiff did not agree "in terms of the factual and legal principles upon which they are based" and that, in light of the disagreement, an early route to settlement seemed unlikely. (Ex. 13- Correspondence Sept. 14, 2016).  On September 16, 2016, Plaintiff again rejected another inadequate settlement offer from Defendant, but indicated a willingness to review Defendant's complete wage and hour records for Plaintiff upon receipt from Defendant. (Ex. 14 - Correspondence Sept. 16, 2014).  On September 19, 2016, Plaintiff rejected yet another inadequate settlement offer from Defendant and indicated she possesses an active and personal interest in resolving this case on a collective basis on behalf of herself and those similarly situated. (Ex. 15 - Correspondence Sept. 19, 2016).

On September 30, 2016, Plaintiff's counsel received settlement correspondence from Defendant's counsel. [ECF No. 21-2].  Defendant's counsel stated "the attached lays out with specificity what they did.*" [ECF No. 21-2, p. 2].  Defendant attached the same Excel Spreadsheet described above. Defendant's counsel indicated that the amounts in the spreadsheet reflect "Pyramid's calculations to remedy the overtime pay dispute, as well as the amount paid to Ms. Getchman after deducting the taxes that needed to come out from the per diem amount". [*Id*. at p. 2].  Defendant claimed the spreadsheet reflects an amount owed to Plaintiff of $11,945.91 on 534 hours of overtime at her "new pay rate."  The spreadsheet describes an amount of $8,564.73 as "less benefit of taxes saved", whereas Defendant counsel's letter describes the amount as "deductions of taxes" paid. [*Compare* ECF No. 21-2, p. 2 *with* p. 7].  The spreadsheet describes "total gross payable amount" as $3,381.18, less $672.27 in taxes, for a net amount of $2,708.91. [ECF No. 21-2, p. 7].  Defendant's counsel identifies the $8,564.73 amount as an amount that ADP calculated for the deductions, and that such deductions left an amount to be paid. [ECF No. 21-2, p. 2].  The spreadsheet does not describe these amounts as actual wages, net pay, gross pay, or taxable payments with deductions actually withheld; or that such deductions or taxes on Plaintiff's straight time wages were paid. (*Id*.).

On or around September 30, 2016, Defendant's served a Rule 68 offer of judgment with a check for $15,000.00 stapled to it. [ECF No. 21-2]. In the memo line on the check, it read "Settlement." [ECF No. 21-2, p. 15].  This check was not accepted or deposited; in fact, the check was returned to Defendant's counsel. [*Compare* ECF No. 21-2, p. 15 *with* p. 11] (Ex. 17 – Correspondence November 14, 2016).

On October 4, 2016, Defendant's counsel responded to Plaintiff's request for records and supporting documents upon which Defendant's Counsel's assertions were based. (Ex. 16 -

Correspondence Oct. 4, 2016). Defendant provided a handful of paystubs and a "Fieldglass" hours worked report for the "relevant time period." (*Id.*).  These records were incomplete, and limited to the period of July 7, 2014 through July 5, 2015. (*Compare* Ex. 16 *with* Ex. 3, Ex. 4, Ex. 7).

On October 28, 2016, Defendant filed its Motion to Dismiss based upon its unaccepted Rule 68 Offer of Judgment. [ECF No. 21].

## ARGUMENT

### I.  Defendant Has Not Made An Offer of Full And Complete Relief.

Defendant's Motion states—without support—that the amount of overtime Plaintiff alleges she is entitled to is \$11,945.91, that Plaintiff's ***maximum*** recovery with liquidated damages is \$23,891.92, and that Plaintiff has been paid \$26,945.91 in settlement of this claim. [ECF No. 21, p. 3, n. 2]. Defendant's records for Plaintiff's employment reflect substantial miscalculations of Plaintiff's unpaid overtime ***by a minimum*** of \$11,945.91 (unliquidated), which after doubling for liquidated damages totals at least \$23,891.92.  Further, there is serious uncertainty in this amount, rooted in specific concerns regarding Defendant's unlawful pay practices and maintenance of wage, hour, and tax records.  Moreover, there are other categories of relief provided by statute which Defendant's inadequate and incomplete settlement offers have wholly ignored.

#### A.  Plaintiff's Minimum Unpaid Overtime Claim.

The FLSA establishes the "Regular Rate" as the keystone of the Act. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, (1945).  The "Regular Rate" defined by the Act is an "actual fact," and "cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee." § 778.108 (citing 29 U.S.C. §207(e)); *see also Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 465 (1948); *Walling,* 325 U.S. at 424 (1945). "Once the parties have decided upon the amount of wages and the mode of payment the determination of

the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts." *Id*.

Here, the parties have repeatedly set and calculated Plaintiff's straight time wages at $28.12 and $32 per hour for the work performed during the relevant time periods. (Ex. 1, Ex. 2, Ex. 3). Formulae within Defendant's spreadsheet calculate per diem payments on the basis of dividing the per diem pay by the straight time wages. (Ex. 11 - Spreadsheet).  Upon a calculation of the regular rate of pay for straight time earnings, Plaintiff's earnings appear to be, at minimum, $32 per hour. At $32 per hour, Plaintiff's overtime earnings for 534 hours of overtime would be:

### Overtime Owed

$$[1.5 \text{ x } (\$32) \text{ x } 509.5] = \$24,456$$

$$[1.5 \text{ x } (\$28.12) \text{ x } 24.5] = \$1033.41$$

$$\$24,456 + \$1033.41 = \$25,489.41$$

### Offset Of Overtime Premium Contemporaneously Paid

$$1.5 \text{ x } (\$17) \text{ x } 534 + 1.5 \text{ x } (\$15) \text{ x } 24.5 = \$13,543.50$$

### Total Unpaid Overtime Premium Compensation

$$\$25,489.41 - \$13,543.50 = \$11,945.91$$

### Liquidated Damages

$$\$11,945.91 \text{ x } 2 = \$23,891.82$$

These amounts match those contained in Defendant's spreadsheets and reflect the amount of Plaintiff's claims, less off-set for overtime premium pay contemporaneously paid.

**B.**   **The Unpaid Amount of $8,564.73 Erroneously Attributed to Offset Would Increase the Regular Rate And Increase The Amount Of Unpaid Overtime Owed.**

Most peculiarly, Defendant claims a credit in the amount of $8,574.73 for unpaid taxes on the per diem rate payments not contemporaneously withheld. [ECF No. 21-2, p. 2]. Under the law, however, Defendant is not entitled to any such offset or credit.

Courts have focused upon the remedial nature of the FLSA and its supporting regulations to find that an employer's ability to offset amounts from overtime wages owed is strictly limited to extra, overtime premium compensation that falls within sections 207(e)(5), (6), and (7)—"[n]o other types of remuneration for employment may be so credited." *Smiley v. E.I. Dupont De Nemours & Co.*, No. 14-4583, 2016 WL 5864508, at *4 (3d Cir. Oct. 7, 2016); *see* 29 C.F.R. § 778.201(c).  No offset is permitted for straight time compensation legally excluded or voluntarily chosen to include in the regular rate. *Id.* at *5.

Here, Plaintiff's paystubs and W-2 records reflect no payments beyond Plaintiff's historical wages and the abovementioned corrections to Plaintiff's overtime premiums paid.  Plaintiff's ADP payroll records reflect when corrections are made to those records. (Ex. 3, pp. 29, 30, 40-41; Ex. 5 - Correspondence Aug. 27, 2015; Ex. 4). Accordingly, upon examination of Defendant's Spreadsheets (*i.e.*, Ex. 11), the references to amounts of "less, benefit of taxes she has saved," "less, all employee taxes" or other "payable" amounts have no legal significance or relevance; what matters under the law is premium payments actually made. [*See also* ECF No. 21-2, pp. 6, 7].  The amounts identified as back taxes – such as $8,564.73 – have no bearing on Plaintiff's claim for unpaid overtime; it is an unpaid amount of taxes on Plaintiff's straight time wages that was not withheld at time of payment of the improper per diem wages, was not included in the regular rate, and was not paid as premium pay. [ECF No. 21-2, p.7] ("Less, benefit of taxes she

has saved because of per diem $30,493.88").  Significantly, there is no evidence that it was *ever* paid by Defendant. (*See, generally,* Ex. 3, Ex. 4).  Similarly, the only evidence that the "remaining" amount of $3,381.18 was ever paid is a check for $2,708.91.  This check is the only record that any amount of unpaid overtime was ever actually paid. [ECF No. 21-2, p. 11].  However, there again is no evidence of any taxes on this sum ever being paid to Plaintiff or the government. (*See, generally*, Ex. 3; Ex. 4; Ex. 7).  This casts serious, if not dispositive, doubt as to whether this amount could be considered lawful, retroactive back payment of wages for unpaid overtime premiums.

Even if Defendant somehow comes forward with proof that the taxes owed of $8,564.73 were retroactively paid, Plaintiff's regular rate (and unpaid overtime wages) would only *increase*, as follows:

### Approximate New RR

$32 + ($8,564.73 Deductions / 2061 straight time hours) = $36.16/hr

### Overtime Owed

$36.16 x 1.5 x 534 = $28,964.16

### Offset Overtime Premium Paid

$28,964.16 - $13,543.50 = $15,420.66

### Liquidated

$15,420.66 x 2 = $30,841.32

### Less Payments

$30,841.32 - $18,381.18 = $12,460.14

Far from mooting Plaintiff's claim, the missing $8,564.73 payments exacerbate Defendant's problematic calculations rather than offer full relief and resolve Plaintiff's claims.

**C.    Defendant Has Neither Sought to Pay Nor Actually Paid Plaintiff an Amount in Excess of $23,891.82.**

Even if Plaintiff's maximum recovery is $23,891.92, Defendant has materially misrepresented the amount actually paid to and received by Plaintiff as $26,945.91. [ECF No 21, p. 3, n. 2].  Defendant argues the mootness of Plaintiff's claims based on an assertion that it has actually paid Plaintiff $26,945.91 in overtime.  This is false.  Defendant previously paid $13,617 of overtime owed to Plaintiff (*i.e.*, $25,632), leaving approximately $11,945.91 (unliquidated) or $23,891.82 (liquidated) unpaid.  Defendant claims to have offered (and paid) a settlement amount of $26,945.91. However, the only additional payments to Plaintiff Defendant has identified (beyond the $13,617 previously paid) is the cashed check for $2,708.91 (with no evidence of $672.27 ever being withheld as taxes from the purported "gross payable amount" of $3,381.18) and a check for $15,000.00 (which Plaintiff rejected and returned to Defendant).  Even if Plaintiff accepted this check (she did not), this payment plus the $2,708.91 fall far short of the lowest estimate of wages owed to her under the FLSA (*i.e.*, $23,891.82).  Further, even assuming the validity of Defendant's claims that payment has occurred in the amounts of $15,000.00 and $3,381.18, such payments amount merely to $18,381.18.  This leaves, as a matter of basic math, a minimum of $5,510.64 unpaid.

Simple review of the plain language of 29 C.F.R. §§ 531.38 and 778.106 indicates that in order to be considered retroactive payment wages, payments must be contemporaneously collected by the employer and forwarded to the appropriate governmental agency to be included as "wages." 29 C.F.R. § 516.2(b) further indicates a singular way to document and effectuate retroactive payment of wages: under the supervision of the Administrator of the Wage and Hour Division pursuant to section 16(c) and/or section 17 of the Act.

No such evidence appears in the record that any amount was ever paid, in taxes or otherwise, in conjunction with any calculations related to the $11,945.91 allegedly paid (before the abovementioned, purported tax "savings" and "withholdings" for which no records exist). The only record before the Court is a singular, cashed check for $2,708.91 (without any documentation of lawful withholdings therefrom, or from any other amount of unpaid overtime owed) and an uncashed check for $15,000.00.  Neither Plaintiff's pay records nor records before the Court reflect any involvement from the Administrator of the Wage and Hour Division, any lawful retroactive payment of wages, or any contemporaneous payment of taxes.

Nonetheless, Defendant appears to claim that Defendant has paid Plaintiff the amount of $11,945.91. Aside from numerous issues discussed regarding Defendant's improper calculation overtime amounts owed to Plaintiff, Defendant materially misrepresents the factual record: at most, the record reflects *an offer of $15,000.00* and a questionable and incomplete payment of $2,708.91.  However, as discussed above, neither constitutes an amount or type of payment which can be either lawfully offset from unpaid overtime wages owed under the FLSA or relied upon to moot Plaintiff's claims for relief in this lawsuit.

## D.    Additional Uncertainty Precludes a Motion To Dismiss On Subject Matter Jurisdiction.

Courts have routinely identified that any uncertainty on the total ultimate amount owed, solely on the face of the face of pleadings, is enough to defeat a motion to dismiss on subject matter jurisdiction for Article III mootness pre-discovery. *Mey v. N. Am. Bancard, LLC*, No. 14-2574, 2016 WL 3613395, at *3 (6th Cir. July 6, 2016) (holding case or controversy not moot where pleadings suggest "there may be more damages than the parties are aware of"); *Conway v. Portfolio Recovery Associates, LLC*, No. 15-5925, 2016 WL 6276057, at *1 n. 1 (6th Cir. Oct. 27, 2016)

(unnecessary to address *Campbell-Ewald* dissent hypothetical where unaccepted tender does not fully satisfy claim for relief).

Defendant's pay records—such as the paystubs dated Sept. 10 and 24, 2014—create further uncertainty (beyond the uncertainty regarding the above-discussed amounts owed) as to whether Defendant lawfully paid Plaintiff hour all overtime hours worked. (*Compare* Ex. 3 – pp. 3, 4) (noting "Exp Reimbursed" of $1049.60 or $524.80 per workweek) *with* ECF No. 21-2, p. 6) (marking paid per diem as 600 per week rather than 524.80 per week for weeks ending 8/24/14 through 9/14/2014). Similarly, nowhere within Plaintiff's paystubs are any other payments–per diem, settlement, or tax payments—reflected as corrections. (*See generally*, Ex. 3). Defendant's counsel indicated that the factual basis for Defendant's calculations are limited to these incomplete and conflicting records. (Ex. 16 – Correspondence).

This uncertainty and inconsistency provides a floor for Plaintiff's claims, as Plaintiff herself recognizes in communications with Defendant. (Ex. 12 – Correspondence, p.4) ("lawsuit allows me to collect a minimum of 100% damages plus costs which would be a minimum of $23,890").  It also demonstrates the inaccuracy of Defendant's wage and hour records maintained under 29 C.F.R. §516 and 29 U.S.C. §211(c) and entitles Plaintiff to the burden-shifting analysis of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946) (burden-shifting triggered where employee has demonstrated violations of recordkeeping provisions and the performance of work not paid in accordance with the statute).

Here, substantial uncertainty in the total amount of Plaintiff's damages—at many levels— alone justifies denial of Defendant's Motion.  In fact, further discovery is necessary for both parties (and this Court) to assess the true nature and extent of Plaintiff's damages and Defendant's purported payments.  Even small variations in the regular rate that may be uncovered in discovery

have the potential to magnify Plaintiff's losses in connection with her 534 overtime hours not properly paid (especially given the strong potential for—if not guarantee of—doubling through liquidated damages).  Accordingly, the Court should deny Defendant's Motion.

## II.     Defendant Did Not, And Cannot, Unilaterally Moot Plaintiff's Claim.

"Article III of the United States Constitution limits the jurisdiction of the federal courts to actual, ongoing cases and controversies." *Haden v. Pelofsky,* 212 F.3d 466, 469 (8th Cir. 2000); *see* U.S. Const. Art. III, § 2, Cl. 1.  The United States Supreme Court has acknowledged Art. III justiciability is a legal concept without "fixed content," not "susceptible of scientific verification," and is "of uncertain and shifting contours," especially when considering "nontraditional forms of litigation" such as class or collective actions. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400-03 (1980).

The doctrine of mootness under Art. III involves two considerations: (1) when issues presented are no longer "live," and (2) the parties lack a legally cognizable interest in the outcome. *Id*. at 396 (citing *Powell v. McCormarck*, 395 U.S. 486, 496 (1969)).  An issue in a lawsuit is only no longer "live" when a court cannot grant specific and conclusive relief as to the issue raised. *State of Neb. v. Cent. Interstate Low-Level Radioactive Waste Compact Comm'n,* 187 F.3d 982, 987 (8th Cir. 1999).  So long as it remains possible "for the court to grant **any effectual relief whatever** to the prevailing party" on its claims, the claims are not moot. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (emphasis added).

Courts refer to the second component of mootness as the "personal stake" requirement. *Id*. This requirement relates to the first purpose of Art. III's case-or-controversy requirement: ensuring disputes before courts are capable of resolution. *Id*. at 396-403 (discussing cases wherein mootness did not exist, even though named plaintiff lost "personal stake" in litigation).  The Supreme Court

has cautioned courts <u>not</u> to conflate justiciability doctrines of initial standing (*i.e.*, "personal stake" requirement) and post-filing mootness: "[c]areful reflection on the long-recognized exceptions to mootness reveals that the description of mootness as 'standing set in a time frame' is not comprehensive." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174, 190 (2000) (concluding "[t]he plain lesson of these cases is that there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support **standing**, but not too speculative to overcome **mootness**") (emphases added).

The "heavy burden" of proving mootness falls on the party asserting it. *Kennedy Bldg. Assocs. v. Viacom, Inc.,* 375 F.3d 731, 745 (8th Cir. 2004); *Boswell v. Panera Bread Co.*, 311 F.R.D. 515, 524 (E.D. Mo. 2015) (denying motion to dismiss where plaintiff did not accept defendant's complete offer of relief).  No legal or factual basis exists to dismiss Plaintiff's claims on the basis of mootness.  Defendant advances essentially two arguments: (1) this District has incorrectly read the plain language and holding of *Campbell-Ewald*; and (2) Defendant "tendered full relief to Plaintiff" by its Rule 68 Offer of Judgment.  Neither argument has merit.

A. **Rejected Settlement Offers Do Not Moot Claims.**

Courts across the country unanimously reject efforts by defendants to "moot" unaccepted offers of judgment or settlement in order to "pick out" plaintiffs and take control of putative collective actions.  After Justice Kagan's scathing dissent in *Genesis Healthcare,* 133 S. Ct. 1523 (2013) (Kagan, J. Dissenting), the United States Supreme Court in *Campbell-Ewald,* 136 S.Ct. 663 (2016) made abundantly clear: "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case."  Since *Campbell-Ewald*, this District further clarified "there is no principled difference between a plaintiff rejecting a *tender* of payment and an *offer* of payment, a distinction

that did not persuade the majority in *Campbell-Ewald*." *Radha Giesmann, MD, P.C. v. Am. Homepatient, Inc.*, No. 4:14CV1538 RLW, 2016 WL 3407815, at *3 (E.D. Mo. June 16, 2016). Notwithstanding this resolved issue, Respondent contends "the rationale in *Giesmann* is based on an incorrect reading of *Campbell-Ewald*."  This argument has no merit.

In *Campbell-Ewald*, the Supreme Court adopted the analysis of Justice Kagan's dissent from *Genesis Healthcare,* holding that basic principles of contract law relating to offer and acceptance preclude any entry of unaccepted Rule 68 Offers of Judgment or Settlement. *Campbell-Ewald*, 136 S. Ct. 663 (2016) (citing *Genesis Healthcare*, 133 S. Ct. 1523 (2013) (Kagan, J., dissenting)).  The proper analysis—so clear that it is learned "by every first-year law student"—focuses upon "basic principles of contract law" and easily extends to any offer requiring acceptance to effectively moot a claim, such as an unaccepted settlement offer. *Campbell-Ewald*, 136 S. Ct. at 670.  The Supreme Court was not persuaded by any such distinction between "tender" of payment and "offer" of payment. *See id*.; *see also Giesmann*, 2016 WL 3407815, at *3

In fact, this District has already heard, and rejected, Defendant's "tender" argument.  In *Giesmann*, the Court unequivocally concluded "there is no principled difference between a plaintiff rejecting a *tender* of payment and an *offer* of payment." *Giesmann*, 2016 WL 3407815, at *3.  To permit otherwise, Judge White reasoned, would be to grant a defendant unilateral control of class claims raised by a plaintiff (contrary to any valid interpretation of the Federal Rules Civil Procedure or common law) and would only serve to deprive a plaintiff alleging class claims the reasonable opportunity to show that class certification is warranted, a basic procedural right long recognized in the Eighth Circuit. *Id*.

Courts across the country are in accord with *Giesmann* and *Campbell-Ewald*. *See, e.g.*, *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1146 (9th Cir. 2016) (holding neither a check nor deposit

with the Court satisfies common law tender); *Family Med. Pharmacy, LLC v. Perfumania Holdings, Inc.*, No. CV 15-0563-WS-C, 2016 WL 3676601, at *5 (S.D. Ala. July 5, 2016) ("[t]houghtful, well-reasoned decisions have emerged on both sides of the issue; however, there appears to be an emerging consensus against a finding of mootness"); *Yaakov v. Varitronics, LLC*, No. CV 14-5008 ADM/FLN, 2016 WL 4068358, at *4 (D. Minn. July 28, 2016); *Jarzyna v. Home Properties, L.P.*, No. CV 10-4191, 2016 WL 4417277, at *5 (E.D. Pa. Aug. 18, 2016) ("a judgment satisfying an individual claim does not give a plaintiff...exercising her right to sue on behalf of other [individuals], 'all that [she] has... requested in the complaint (i.e., relief for the class")).  Even pre-*Campbell-Ewald* cases appropriately distinguished between tender, payment, and full relief. *Biscaino v. Reliance Heating & Air Conditioning, Inc.*, No. 6:11-CV-851-ORL-28, 2012 WL 527861, at *2 (M.D. Fla. Jan. 30, 2012), report and recommendation adopted, No. 6:11-CV-851-ORL-28, 2012 WL 529550 (M.D. Fla. Feb. 17, 2012) (citing *Klinger v. Phil Mook Enters.,* Case No. 8:11–cv–1586–T–27TGW, (M.D. Fla. Sept. 13, 2011) (holding allowing defendants to avoid responsibility for Plaintiff's attorneys fees "merely by tendering full payment *after* litigation has commenced" would run counter to goals of the FLSA of fully compensating wronged employees)).

Here, as discussed throughout above, no settlement offers or Rule 68 Offers of Judgment have been accepted by Plaintiff.  In fact, all such offers have been explicitly rejected due to inadequacy of the amounts offered in that they have not offered Plaintiff complete relief. [ECF No. 21-2, pp. 12-14] (served September 30, 2016, valid only 14 days after service, and filed October 28, 2016); (Ex. 17 - Correspondence); (Ex. 13; Ex. 14; Ex. 15); [ECF 20, p. 2].  Defendant has not mooted Plaintiff's (or the putative class's) claims under the FLSA.

21

**B.** **Defendant's Offer or "Tender" of $15,000.00 Is Nothing More Than A Rejected Settlement Offer—Not An Unconditional Payment Actually Mooting Plaintiff's Claims.**

Defendant claims that Defendant has paid $15,000.00 to Plaintiff, mooting her claims. [ECF No. 21, p. 3]. This, again, is false.

First, in order to be considered payment under the Act, wages must be paid "free and clear." *See* 29 CFR § 531.35 ("wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally"). Second, the cases relied upon by Defendant note a critical difference between tender, offer, and payment. Defendant cites to a line of cases from the Fourth Circuit – *Price v. Berman's Auto., Inc.*, No. 14-763-JMC, 2016 WL 1089417, at *3 (D. Md. Mar. 21, 2016), adopted by *Gray v. Kern*, 143 F. Supp. 3d 363, 367 (D. Md. 2016) – as standing for the proposition that payment is "critically distinguishable" from offers. [ECF No. 21, p.7]. The analyses in these cases do not support Defendant's arguments. Indeed, the Court in *Price* denied the defendant's motion to dismiss based on mootness because no payment had occurred when the plaintiff returned the check tendered to her. *Price*, 2016 WL 1089417, at *3.

In this case, no "absolutely clear" proof of full and complete payment being both delivered and made is before the Court. *See Kern*, 143 F. Supp. 3d at 367 (finding, in light of *Price*, only "a measure which makes absolutely clear that the defendant will pay the complete relief the plaintiff can recover and that the plaintiff will be able to receive that relief will moot the issue in controversy"). Aside from substantial questions regarding the amounts owed to Plaintiff, the record clearly reflects that the check offered to Plaintiff is not offered "free and clear"; Defendant seeks to effectuate "settlement" of Plaintiff's claims as indicated by its memo thereon:

"settlement." [ECF No. 21-2, p. 15].  As such, Plaintiff has never received and accepted full payment constituting complete relief of her claims. *Compare* [ECF No. 21-2, p.11] *with* [ECF No. 21-2, p. 15] (absence of endorsement, deposit, or payment in check image).  Finally, as in *Price*, Plaintiff has rejected and returned the "offer of settlement" check. (Ex. 17 – Correspondence Nov. 14, 2016).

### C.   The Receipt and Deposit of $2,708.91 Did Not Effectuate Valid Settlement or waiver of FLSA Rights And Would Have To Be Reviewed for Fairness

Defendant can only point to an image of a check for $2,708.91 as Plaintiff's [partial] "acceptance" of previously unpaid overtime wages owed to her. [ECF No. 21-2, p. 11].  However, even if the Court assumes that this check image is evidence of Plaintiff's "acceptance" (it is not), such an amount does not come remotely close to fully satisfying or settling Plaintiff's FLSA claims.

It is well-established that FLSA rights are statutory and cannot be waived. *Copeland v. ABB, Inc.,* 521 F.3d 1010, 1014 (8th Cir. 2008) (citing *Barrentine v. Arkansas–Best Freight Sys.*, 450 U.S. 728, 740 (1981)).  Under two very specific circumstances, however, defendants can effectuate a valid settlement and/or waiver of claims under the FLSA. *Beauford v. ActionLink, LLC*, 781 F.3d 396, 405 (8th Cir. 2015).  First, before employees sue, they can resolve their FLSA rights only if they agree to accept full payment of a settlement offered by their employer, they receive full payment of that settlement, and the settlement was supervised by the Secretary of Labor. *Id*.  Here, none of these circumstances are present.

Second, however, after commencing litigation, employees can waive their rights ___**only if the parties agree**___ on a settlement amount and the district court enters a stipulated judgment approving it as fair and reasonable. *Id.*  Simply offering or tendering a check and having the employee cash that check does not constitute a valid "agreement" to waive claims absent Court

supervision; an agreement must exist independently of payment and this process must be supervised by the Court. *Id.* at 406. Here again, however, none of these circumstances are present. More importantly, Plaintiff has regularly communicated to Defendant that no agreement exists between them regarding settlement. (Ex. 13; Ex. 14; Ex. 15); [ECF No. 20, p. 2].

Even if such an agreement did exist (one does not), such agreements must pass scrutiny by the Court. A district court may only approve a FLSA settlement agreement after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties. *Fry v. Accent Mktg. Servs. L.L.C.*, No. 4:13-CV-59 (CDP), 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014). Typically, the Court examines the stage of litigation and amount of discovery exchanged, whether parties were represented by experienced counsel, the probability of success on the merits, "overreaching" by the employer in settlement negotiations, and arm's length negotiations between represented parties based on the merits of the case. *See, e.g., Bench v. Cheyenne Logistics, LLC.*, No. 4:14-CV-01327-NCC, 2016 WL 2997591, at *2 (E.D. Mo. May 25, 2016). Here, it is clear from the record that no enforceable settlement agreement under the FLSA exists.

### D.   Defendant's Offer Leaves Unaddressed Class Claims' For Relief, Attorney's Fees, and Other Relief Under The FLSA.

Defendant argues that Plaintiff is only entitled to monetary damages—compensatory and liquidated—under the FLSA, and that the Court can exclude consideration of fees and costs, as well as her right to proceed collectively. [ECF No. 21]. In support of these arguments, Defendant relies upon an unaccepted Rule 68 Offer of Judgment in an attempt to pre-emptively address Plaintiff's individual claims for attorney's fees and costs and disregard Plaintiff's right, *inter alia*, to proceed collectively on behalf of similarly situated employees.

The Supreme Court has held that a substantial, legally cognizable interest remains where it "fails to give the plaintiff all the law authorizes and she has sought" including "all that [she] has ... requested in the complaint (*i.e.,* relief for the class)." *Deposit Guaranty Nat. Bank v. Roper,* 445 U.S. 326, 341 (1980) (Rehnquist, J., concurring); *see also, Genesis Healthcare*, 133 S. Ct. at 1536 (asserting that §216(b) claims alleging and pursuing collective relief unmooted in absence of a jurisdictional gap). "In an FLSA case for damages, that [jurisdictional] gap cannot occur (unless a court, as [in these uniquely flawed circumstances assuming waiver], mistakenly creates it)." *Genesis Healthcare*, 133 S. Ct. at 1536–37.

Defendant's exclusion of Plaintiff's claim for entitlement to fees is improper.  Defendant cites to *Demmler v. ACH Food Companies, Inc.,* No. 15-13556-LTS, 2016 WL 4703875, at *5 (D. Mass. June 9, 2016) for the proposition that attorney's fees are always excludable from Article III mootness considerations.  However, *Demmler* addresses the attorney's fees provision of an entirely different statute—29 U.S.C. § 1988—and other provisions of Massachusetts law. *Id.*

Here, however, unlike the statutes in *Demmler*, the FLSA expressly provides for attorney's fees and costs as a mandatory remedy. 29 U.S.C. §216(b) ("[t]he court in such action ***shall***, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Fegley v. Higgins*, 19 F.3d 1126, 1135 (6th Cir. 1994) (distinguishing mandatory attorney's fees under § 216(b) as mandatory and separate from Rule 68 costs and from discretionary provisions of 29 U.S.C § 1988).  Thus, *Demmler* is simply inapposite as Plaintiff's claim for attorney's fees is rooted in the relief afforded by 29 U.S.C. § 216(b). Plaintiff's attorney's fees permit the maintenance of a live, justiciable controversy through to complete satisfaction of her claim, including full relief for all similarly situated employees.

25

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Deborah Lynn Getchman respectfully

requests this Court enter an Order denying Defendant's Motion to Dismiss For Lack of Subject

Matter Jurisdiction, and for such other relief as this Court deems just and proper.

Respectfully Submitted,


By:         */s/ Kevin J. Dolley*       
               Kevin J. Dolley (E.D. Mo. #54132MO)
               Jason M. Finkes (E.D. Mo. #65903MO)
               LAW OFFICES OF KEVIN J. DOLLEY, LLC
               2726 S. Brentwood Blvd.
               St. Louis MO 63144
               (314)645-4100 (office)
               (314)736-6216 (fax)
               kevin@dolleylaw.com
               jason.finkes@dolleylaw.com

               *Attorneys for Plaintiff Deborah Lynn Getchman*
               *and those similarly situated*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was served upon the attorneys of record for

Defendant by electronic filing on November 14, 2016 through the Court's electronic filing system.


               */s/ Kevin J. Dolley*