**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DEBORAH LYNN GETCHMAN, Individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:16-cv-01208-CDP |
| PYRAMID CONSULTING, INC., | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant Pyramid Consulting, Inc. ("Defendant"), by and through counsel, hereby submits its Reply Brief in Support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction. Defendant established in its underlying motion why Plaintiff's claims should be dismissed. (Dkt. #21). Specifically, Defendant showed that Plaintiff's claims should be dismissed pursuant to the mootness doctrine because Defendant has tendered to Plaintiff all of the Fair Labor Standards Act ("FLSA") overtime and liquidated damages that she could ever possibly recover in this case. *Id*. Nothing in Plaintiff's opposition brief changes this result.

**I.    LAW AND ARGUMENT**

1. **Plaintiff belatedly provides the basis for her disagreement with Pyramid's 2015 overtime payment, after numerous earlier requests from Pyramid went unanswered.**

As Pyramid explained in its underlying motion, after Plaintiff filed this lawsuit, Pyramid's representatives made multiple communications to Plaintiff's counsel to understand why Plaintiff

believed that she had any remaining claim for overtime damages in light of the retroactive overtime payment that Pyramid made in September 2015. (Dkt. #21-2). In the context of these communications, Pyramid provided documentation which explained how it calculated that payment. *Id*. Pyramid's counsel specifically asked Plaintiff's attorneys to state whether they disagreed with Pyramid's overtime calculations and, if so, why. *Id*. However, while Plaintiff's counsel responded that they disagreed with Pyramid's calculations, they never explained the basis for their disagreement and never provided their own calculations related to her claimed overtime damages. Now, only after Pyramid has moved for dismissal has Plaintiff belatedly provided the basis for her disagreement with Pyramid's calculations. Pyramid respectfully submits that Plaintiff's refusal to provide this information has resulted in both parties incurring unnecessary attorneys' fees and constitutes additional evidence that Plaintiff's goal is to extend this lawsuit in a naked attempt to potentially increase the amount of fees that Plaintiff (and her attorneys) can recover.

**2. Plaintiff's response demonstrates that her disagreement with Pyramid's calculations is not based on the FLSA.**

Although Plaintiff has finally provided the basis for her disagreement with Pyramid's 2015 overtime calculation, her explanation reveals that her disagreement is not based on the FLSA. Rather, Plaintiff's dispute appears to be based in tax law or some other legal authority. However, the only legal claim in this case is one brought under the FLSA.

It is worth recalling the reason for Plaintiff's 2015 communication to Pyramid about her wages – i.e., her belief that Pyramid incorrectly excluded per diem payments from the regular rate calculation when it paid her overtime. (Dkt. #31, pp. 2-4). Plaintiff asserted that Pyramid should have calculated her overtime payments based on a regular rate of $32/hr. regular rate, which would have consisted of her $15/hr. rate combined with her $17/hr. per diem rate. *Id*.; *see also* p. 6. In

2

response, and as Plaintiff admits, Pyramid used this regular rate when it re-calculated her overtime pay and paid her the delta between what it had paid her in overtime previously under the $15/hr. regular rate (i.e., when the per diem payments had been excluded) and what she would have been due under the $32/hr. regular rate. *Id.* at 5; Ex. 10. The delta between these two calculations was $11,945.91 -- before the withholding of any taxes. *Id.* at p. 10.  Now, Plaintiff objects to the amount withheld/deducted from the delta for taxes (i.e., $8,564.73). *Id.* at p. 13. Plaintiff asserts that Pyramid has improperly taken a "credit" for this amount and also questions whether Pyramid ever paid the tax deduction to the government. *Id.* at pp. 13-14.

First, Pyramid agrees that the $8,564.73 amount is not an FLSA "credit," but it has never taken that position. In support of its assertion that Pyramid took a "credit" for the withheld amount, Plaintiff cites to a page from a letter to Plaintiff's counsel wherein Pyramid explained how it calculated the 2015 retroactive overtime payment. (Dkt. #21-2, p. 2).  However, in that letter, Pyramid clearly referred to the $8,564.73 amount as a "deduction" for specified government-related taxes/withholdings:

> "*As you will see, they [Pyramid] first had to determine how much in deductions should have come out from the per diem payments which totaled $30,493.88. You'll see the **deductions** ended up totaling $8,564.73, which included federal withholding, social security, Medicare and Missouri taxes*."
>
> *The amount of additional overtime was $11,945.91. So they deducted the $8,564,73 in taxes...."*

*Id*. (emphasis added).  Thus, Plaintiff's "credit" assertion is wrong and ignores the plain language from the cited correspondence.

Second, setting aside the incorrect terminology which Plaintiff uses when referring to this amount, Plaintiff's disagreement with Pyramid's tax calculations does not implicate the FLSA. While Plaintiff may believe that Pyramid deducted too much in taxes when it arrived at the

3

$8,564.73 figure, it is significant that she does say how much Pyramid should have deducted. Nevertheless, there is no cause of action under the FLSA for an employee who believes that her employer erred when calculating and remitting employment-related taxes to the government.

Furthermore, Plaintiff's dispute with Pyramid's tax calculation veers into the bizarre when she argues that Pyramid should have included the $8,564.73 tax deduction in the regular rate calculation that it used when making the 2015 retroactive overtime payment. (Dkt. #31, p. 14). Apparently not satisfied with Pyramid adding the hourly per diem rate to her hourly wage (for a regular rate of $32/hr.) and making its regular rate calculation on the basis of her pre-tax wages, Plaintiff argues that Pyramid should have also divided the $8,564.73 tax deduction by the total number of non-overtime hours worked during the relevant period and added that hourly figure back into her regular rate calculation resulting in a new regular rate of $36.16/hr. In other words, under Plaintiff's theory, any time an employer withholds any sort of taxes from an employee's gross wages, the employer should apparently determine the hourly equivalent of those withholdings and add that hourly equivalent back into the regular rate calculations when determining overtime pay. This is incorrect and, not surprisingly, Plaintiff identifies no legal authority to support this type of regular rate calculation. The fact of the matter is that the $8,564.73 amount represents a diversion to the governmental taxing authorities of a portion of Plaintiff's already-computed wages to cover legally-required amounts that Plaintiff is required to pay. That the amount is diverted from Plaintiff's wages (including overtime wages) does not somehow mean the amount represents *additional* sums (i.e. wages) that Pyramid is paying out of its own funds on Plaintiff's behalf such that it should be added "back into" the regular rate calculation.[1]

---

[1] Following Plaintiff's theory to its logical conclusion would result in a never-ending loop of tax and regular rate calculations. Every time an employer calculated an employee's regular rate and arrived at wages due, it would calculate the taxes flowing from those wages, then it would have to

4

In *Gagnon v. United Technisource, Inc.*, 607 F.3d 1037 (2010), the Fifth Circuit demonstrated how an employee's regular rate must be determined after deciding that an employer's per diem payment was not a valid FLSA reimbursement. The court held that the hourly based per diem rate of $13.50/hr. was "part of [plaintiff's] hourly remuneration for employment" and therefore must be added to his normal $5.50/hr. pay to arrive at the employee's regular rate for "the purpose of determining overtime pay due under the FLSA." *Id.* at 1042. This is not complicated and is exactly what Pyramid did when it agreed to make a retroactive overtime payment to Plaintiff in September 2015. In sum, Pyramid's regular rate calculation was correct under the FLSA.[2]

### 3. Plaintiff mischaracterizes Pyramid's payments and attempts to raise claims that are not in the Complaint.

Plaintiff also incorrectly argues that Pyramid "materially misrepresented" the amount it has paid to Plaintiff. (Dkt. 31, p. 15). Pyramid's payments to Plaintiff were as follows (and were represented as follows):

- the "recalculated" overtime payment in September of 2015 in the gross amount of $11,945.91 (with such amount being reduced after the deduction of the specified taxes/withholdings);

- the tender via letter dated September 30, 2016 in the amount of $15,000 (which, as explained in Pyramid's underlying motion (Dkt. #21, p. 3, fn. 2), represented

---

add that amount back into the regular rate and re-calculate the wages due, then it would have to calculate the taxes flowing from those wages, etc. Rinse, wash and repeat.

[2] Plaintiff also observes that there is no evidence that Pyramid ever submitted the $8,564.73 to the government. (Dkt. 31, p. 14). This is a red-herring. In addition to not creating a cause of action for "erroneous tax calculations," the FLSA also does not grant a cause of action to an employee who believes her employer failed to remit taxes to the government on time

5

> payment for liquated damages of the $11.945.91 amount with extra money to spare);
>
> - for a total of $26,945.91.

Thus, Pyramid made no misrepresentation at all in regards to what it paid to Plaintiff. Plaintiff's argument that the amount was misrepresented was based on the fact that the $11,945.91 was a gross, not net, number. However, Pyramid has never hidden that fact. In sum, the arguments on pages 15-16 of Plaintiff's Opposition Brief are merely restating her objection to Pyramid's tax calculations; however, such argument has no merit as demonstrated above.[3]

Plaintiff also argues that there is "additional uncertainty" about whether she has been fully satisfied based on her pay stubs. *Id*. at p. 17. Specifically, she raises the specter that there may have been overtime hours worked which were not recorded. *Id*. This is the first time that Plaintiff has suggested an "off the clock" violation and, significantly, the Complaint contains no such allegation. Plaintiff also has not provided any sworn testimony, through an affidavit or otherwise, that she worked any unrecorded overtime hours. This is yet another failed effort by Plaintiff to distract the Court from the fact that she has been fully satisfied.

### 4. *Campbell-Ewald* did not hold that a <u>tender</u> of full relief fails to moot a plaintiff's case; it specifically avoided answering that question.

Addressing the legal argument raised in Pyramid's underlying motion, Plaintiff argues that the U.S. Supreme Court's decision in *Campbell-Ewald v. Gomez*, 136 S.Ct. 663 (2016), forecloses the application of the mootness doctrine when a defendant has tendered, as opposed to merely offering to pay, full relief. (Dkt. #31, p. 20). Repeating the error in the *Giesmann, MD, P.C. v. Am.*

---

[3] Pyramid suggests that if the Court were to conclude that there remains a "shortfall" of $5,510.64 as Plaintiff asserts (Dkt. 31, p. 15), the Court could agree to the dismissal of the case upon proof by Pyramid that it has tendered this additional amount to Plaintiff.

6

*Homepatient, Inc.*, No. 4:14CV1538RWL, 2016 WL 3407815, at *3 (E.D. Mo. June 16, 2016), decision, Plaintiff argues that "the Supreme Court was not persuaded by any such distinction between 'tender' of payment and 'offer' of payment." (Dkt. #31, p. 20). This is incorrect.

As Pyramid showed in its motion, *Campbell-Ewald* held only that a class action was not mooted by an unaccepted offer of judgment. *Id*. at 672. The majority specifically declined to address whether a case would be mooted when a defendant actually *tendered* full payment as opposed to merely offering to pay it. *Id*. As Pyramid has explained previously, the *Campbell-Ewald* majority was not, nor could it be, "persuaded" by a question that it specifically refused to answer. (Dkt. #18, p. 10). Moreover, the *Campbell-Ewald* dissent and several subsequent district court decisions demonstrate that the "distinction" is both significant and dispositive. *See Campbell-Ewald*, 136 S.Ct. at 676, 683; *South Orange Chiropractic Ctr., LLC v. Cayan, LLC*, 2016 WL 1441791, *5 (D. Mass. 2016); *Leyse v. Lifetime Entertainment Servs.*, 2016 WL 1253607 (S.D.N.Y. 2016).

Plaintiff also argues that Pyramid's tender was nothing more than a "rejected settlement offer." (Dkt. #31, p. 22). Notwithstanding the fact that Pyramid has provided evidence that it actually sent a $15,000 check to Plaintiff, she argues that there is no proof of "full and complete payment" before the Court. *Id*. Setting aside the fact that Plaintiff is completely wrong about the evidence before the Court, Plaintiff is essentially just arguing that because she has refused to sign and deposit the check (i.e., she did not cash it), somehow it has not been tendered. *Id*. at p. 23. However, courts have held that a case is mooted over a plaintiff's "objection" where a defendant tenders full relief. *See South Orange Chiropractic Ctr., LLC,* 2016 WL 14441791 at *4-5 (mooting Plaintiff's claim over her objections). In *Leyse*, the Southern District of New York observed that the *Campbell-Ewald* majority never reached the question of whether a tender of full relief could

7

moot a case over a plaintiff's objections.[4] *Leyse*, 171 F.Supp.3d at 155. The court then proceeded to hold that where the defendant "has furnished full relief, there is no basis for the plaintiff to object to the entry of judgment in its favor. A plaintiff has no entitlement to an admission of liability…" Accordingly, Plaintiff's "objection" or refusal to accept the tender does not preclude the application of the mootness doctrine.

### 5. Because Pyramid tendered full relief, there was no "compromise" or "settlement" of Plaintiff's FLSA claims and therefore no judicial supervision is required.

Plaintiff argues that she has not agreed to settle or waive her FLSA claims and further argues that even if she had done so, it would not constitute a valid settlement because no judicial supervision of the settlement has occurred. (Dkt. #31, p. 23-24). This is another red-herring. Pyramid has never argued that Plaintiff "settled" or "waived" her FLSA claim. Pyramid has consistently argued that Plaintiff's FLSA claim is moot now that Pyramid has tendered full relief. Courts recognize this distinction, as demonstrated by *MacKenzie v. Kindred Hosp. East, LLC*, 276 F.Supp.2d 1211 (M.D. Fla. 2003), a case involving similar circumstances.

In *MacKenzie*, a defendant offered[5] full relief to a plaintiff who filed an FLSA collective action and asked the court to conditionally certify a collective action even though the *MacKenzie* plaintiff, like Plaintiff here, had failed to identify even one similarly situated individual who was interested in joining the case. *Id*. at 1213-14. The plaintiff argued, in part, that her claims could not be disposed of through an offer of full relief because "judicial oversight" is required for all

---

[4] *Leyse* confirms that Plaintiff's (and *Giesmann's*) interpretation of the *Campbell-Ewald* holding is incorrect.

[5] It is true that *MacKenzie* predates *Campbell-Ewald* and therefore its holding that an <u>offer</u> of full relief can moot a plaintiff's FLSA claim may no longer be good law. However, as Pyramid has explained at length in its underlying motion and in this Reply, it has <u>tendered</u> full relief and not merely offered to do so. Moreover, *MacKenzie's* finding that no "compromise" has occurred where a plaintiff actually receives full relief for her FLSA claim is entirely consistent with the *Campbell-Ewald* dissent and its progeny.

8

FLSA settlements. *Id*. at 1217. The court disagreed, observing that judicial oversight was required only for "compromises" of FLSA claims and because the plaintiff had been offered full relief, no such compromise had occurred. *Id*. The same result is required here. Because Pyramid has tendered full relief to Plaintiff for her FLSA claim, no settlement or "compromise" has occurred which would warrant judicial oversight.

### 6. Plaintiff's remaining claim for attorneys' fees and costs does not preclude application of the mootness doctrine.

As Pyramid showed in its opening brief, courts hold that a plaintiff's remaining interest in attorneys' fees when the underlying claim has been satisfied is insufficient to constitute an Article III case or controversy. (Dkt. #1, p. 8, fn. 5). Plaintiff attempts to avoid this result by arguing that one of the cases cited in Pyramid's motion dealt with a statute other than the FLSA. (Dkt. #31, p. 25). Plaintiff argues that because attorneys' fees are a "mandatory remedy" under the FLSA, an Article III controversy continues to exist here which precludes application of the mootness doctrine. *Id*. This argument is misplaced. Whether the statute governing the underlying claim provides a "mandatory" versus a "discretionary" award of fees does not have any bearing on the mootness of the underlying claim. Perhaps most importantly, courts have reached this exact result in cases involving FLSA claims. In *MacKenzie*, the court concluded that the plaintiff's FLSA claim had been mooted even though the plaintiff's attorneys' fee claim remained outstanding. As the court noted, "the remaining issue regarding the amount of an attorney's fee and costs is a collateral matter and does not involve the merits of the case." *MacKenzie*, 276 F.Supp.2d at 1218, fn. 4 (*citing Burdinich v. Becton Dickinson and Co*., 486 U.S. 196, 199-200, 108 S.Ct. 1717, 100 L.E.2d 178 (1988)). Accordingly, because Pyramid has offered to pay Plaintiff's reasonable attorneys' fees and costs, and because that issue is a "collateral" matter, Plaintiff's claim is moot.

## II.   CONCLUSION

Pyramid respectfully submits that its tender of full relief has mooted Plaintiff's claims under Article III and the Court therefore lacks subject matter jurisdiction over this action. Nothing in Plaintiff's opposition brief changes this result. Accordingly, Pyramid respectfully asks that the Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and grant such other relief as the Court deems just and proper.

        Respectfully submitted,

/s/ *Samantha J. Monsees*
J. Randall Coffey    MO Bar No. 35070
Samantha J. Monsees    MO Bar No. 65545
FISHER & PHILLIPS LLP
4900 Main Street, Suite 650
Kansas City, MO  64112
TEL:  (816) 842-8770
FAX:  (816) 842-8767
Email:  rcoffey@fisherphillips.com
Email:  shorner@fisherphillips.com

ATTORNEYS FOR DEFENDANT
PYRAMID CONSULTING, INC.

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document served via operation of the Court's CM/ECF system to Kevin Dolley and Jason Finkes, Law Office of Kevin J. Dolley, LLC, 2726 S. Brentwood Blvd., St. Louis MO 63144, attorneys for Plaintiff, on this 2nd  day of December, 2016.

        /s/ *Samantha J. Monsees*
        Attorney for Defendant